SUCESIÓN SERRALLÉS *v.* EL ASILO DE DAMAS ET AL.

APELACIÓN procedente de la Corte de Distrito de Ponce.

No. 790.—Resuelto en junio 11, 1912.

INTERPRETACIÓN DE TESTAMENTO—LEGADO—HOSPITAL.—En este caso se discute a cuál de los hospitales de Ponce debe entregarse un legado de cinco mil pesos provinciales dispuesto por el causante de la sucesión promovente a favor del Hospital de Caridad de Ponce.    El Tribunal sentenciador falló que de acuerdo con la prueba practicada el ''Asilo de Pobres de Nuestra Señora de la Guadalupe,'' conocido públicamente con los nombres de ''Hospital de Mendigos,'' ''Hospital de Pobres'' y ''Hospital de Mendigos y Ancianos,'' por ser el único hospital dedicado exclusivamente al albergue de pobres y sostenido exclusivamente por la caridad, debía recibir dicho legado.    Se resolvió en apelación que de la prueba practicada se deduce que el testador tuvo la intención de que dicho legado fuera para este hospital y que la palabra hospital se aplica indistintamente a las instituciones destinadas a dar abrigo y recibir a mendigos y personas pobres, a cuidar y educar niños desprovistos de hogares y a curar enfermos que carecen de recursos, no teniendo por tanto dicha palabra hospital la significación restrictiva que invocan los apelantes.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. José Tous Soto, Nemesio R. Canales y José A. Poventud.*

Abogado de la Sucesión promovente: *Sr. Francisco Parra Capó*.

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Esta es una apelación procedente de la Corte de Distrito de Ponce. La Sucesión de Juan Serrallés Colón compareció ante aquella corte alegando en sustancia que eran los herederos del referido Juan Serrallés Colón, fallecido en la ciudad de Barcelona el día 22 de septiembre de 1907. Que dicho Serrallés falleció bajo testamento otorgado en 8 de abril de 1897, el que fué protocolado en la oficina del Notario Rafael León. Que en dicho testamento y en la cláusula 6ª. del mismo dispuso un legado a favor del "Hospital de Caridad" de Ponce, en los términos siguientes:

"Lego a favor del 'Hospital de Caridad' de esta ciudad la cantidad de cinco mil pesos provinciales que serán satisfechos por mis albaceas o herederos cuando lo tengan por conveniente, después de liquidadas las deudas y pagados deudas y legados que puedan quedar contra mi capital en el día de mi fallecimiento."

Continúa la demanda expresando que los peticionarios se encontraban en condiciones de cumplir la voluntad del testador, entregando los cinco mil pesos provinciales, o sea, tres mil dollars, al referido "Hospital de Caridad" de Ponce, pero ignorando cual era ese hospital o si realmente existía, acudieron los peticionarios a la corte solicitando de ella una orden citando personalmente por medio de sus representantes legales a todos los hospitales y asilos de la ciudad, y por edictos publicados en los periódicos locales a cualquiera entidad o asociación que se creyera con derecho al referido legado, para que comparecieran ante esa corte a alegar lo que tuvieran por conveniente.

Que según la información y creencia de los peticionarios los únicos hospitales y asilos que existen en Ponce son los siguientes: Hospital Tricoche, San Lucas Memorial Hospital, Santo Asilo de Damas, y Asilo de Ancianos Desamparados.

En contestación a la citación y edictos publicados compa-

recieron los cuatro hospitales y asilos arriba expresados, formulando demandas o peticiones según procediera, siguiendo el caso su trámite para señalamiento y juicio, habiendo la corte oído la prueba y los informes presentados a favor y en contra de todos los hospitales y asilos a que se ha hecho referencia.

Después de lo cual la corte llegó a las siguientes conclusiones de hecho:

1ª. Que el "Hospital San Lucas" no existía en la fecha del indicado testamento, a saber, abril 8 de 1897.

2ª. Que el "Hospital Tricoche" no demostró llamarse "Hospital de Caridad," ni que el testador supiera en momento alguno que se le llamara así alguna vez; que el "Hospital Tricoche" se ha conocido siempre pública y generalmente en la comunidad, por más de treinta años, con el nombre de "Hospital Tricoche," teniendo ese edificio la inscripción de "Albergue Caritativo de Tricoche" desde su fundación; que dicho "Hospital Tricoche" ha rechazado varios enfermos pobres y que en él hay estancias para pudientes también a los que se les cobra.

3ª. Que el "Asilo de Damas" se ha conocido por más de treinta años pública y generalmente en la comunidad con ese nombre siempre, o, "Santo Asilo de Damas," teniendo en su edificio la inscripción de "Santo Asilo de Damas" desde su fundación; que dicho "Asilo de Damas" no demostró que el testador supiera en momento alguno que se llamara Hospital o Asilo de Caridad ni que en realidad ese fuera su nombre; que el testador vivió en Ponce y fué vecino de esa ciudad; que nunca se ha conocido al "Asilo de Damas" en Ponce con el nombre de "Hospital de Caridad"; que tanto el "Asilo de Damas" como "Tricoche" cuentan con rentas propias; que el "Asilo de Damas" es en parte para pudientes y en parte para pobres; que ni Tricoche ni Damas se dedican exclusivamente a la caridad; que el "Asilo de Damas" ha negado entrada y socorro a varios pobres a menos que pagaran.

4ª. Que el "Asilo de Pobres de Nuestra Señora de la

Guadalupe," es una asociación civil constituída bajo la Ley
de Asociaciones hacia el año 1893 y existente hoy como tal;
que dicho "Asilo de Pobres" se conoció y conoce pública-
mente en la comunidad con los nombres siguientes: "Hos-
pital de Mendigos," "de Pobres" y "Hospital de Mendigos
y Ancianos"; que su fundación fué un hecho público y de
general conocimiento, del que se ocupó la prensa; que el tes-
tador Don Juan Serrallés contribuyó con $100 para su fun-
dación; que es el único Asilo en Ponce que admite, cuida y
cura enfermos menesterosos y desvalidos de todas clases sin
cobrar nada por ello; que se sostiene exclusivamente de los
socorros y de la caridad; que no cobra medicinas ni médicos
a los asilados; que solamente tiene camas para los enfermos
pobres y menesterosos, sin que admita personas pudientes,
que ahí asisten a todo el mundo gratis; que Juan Serrallés
le donó en vida ropa de cama, colchas y sábanas, que se pre-
sentó en juicio marcada con las iniciales "H. de M.," que
significan Hospital de Mendigos; que esta institución no ha
rechazado a ninguna persona pobre y que hacia el año 1897
era público que se recogía para ampliar las obras del asilo;
que es la única institución que ha comparecido que es exclu-
sivamente de caridad, practicándola desinteresadamente; que
la intención del testador no fué dejar la suma en cuestión a
una institución que se llamara precisamente "Hospital de
Caridad" de Ponce, sino a la institución asilo u hospital que
más dedicara sus servicios a la caridad; que la compareciente
Asilo de Pobres es la institución que más administra real-
mente la Caridad en Ponce.

Como conclusiones de derecho de los anteriores hechos, la
corte decreta: que la doctrina de *Cy-pres* es aplicable a este
caso y que la suma de cinco mil pesos provinciales o sea, tres
mil dollars, debe pagarse a la compareciente "Asilo de Pobres
de Nuestra Señora de la Guadalupe." Todos los demás peti-
cionarios interpusieron recurso de apelación.

Creemos que es bastante claro según resulta de la prueba,
que ninguno de los apelantes demostraron estar compren-

didos dentro de los términos del testamento, pero que sí lo demostró la apelada.   Es cierto que el Asilo de Damas tenía técnicamente un título, a saber, Hospital de Caridad, cuyo título parece ser el que más se asemeja a las palabras empleadas por el testador.   Pero también convenimos en que la naturaleza de sus obras de caridad y palabras del testador, hacen desaparecer la idea de que él tuviera presente a tal "Asilo de Damas."

Se ha hecho gran esfuerzo por el apelante acerca del hecho de que el afortunado Asilo de Pobres no es en realidad un hospital sino más bien un asilo o refugio, pero debe recordarse que según el uso corriente estas palabras son usadas indistintamente; que la marca en las ropas mostraba que el testador durante su vida lo consideraba como un hospital y que en realidad de verdad el Asilo de Pobres se dedica exclusivamente a proteger a los pobres y necesitados proporcionándoles esa ayuda ya por medio de habitación, alimento o asistencia médica.

Alcubilla, en su "Diccionario de Administración," y bajo el título "Beneficencia Pública," capítulo 23, expresa que los hospitales del Rey de Toledo y los de Jesús Nazareno y de Nuestra Señora del Carmen de Madrid, se dedican indistintamente a ayudar al pobre y necesitado y también que la causa principal de la mendicidad es la enfermedad.   Y Escriche en su Diccionario de Legislación, define las palabras hospicio y hospital como significativas de casas destinadas a dar abrigo y recibir a mendigos y personas pobres, para cuidar y educar niños desprovistos de hogares y para curar a enfermos que carecen de recursos.   Por consiguiente, vemos otra vez que la palabra hospital no tiene tal significación limitada que ha querido dársele solamente con referencia a gente enferma, según los apelantes quisieron interpretar dicha palabra.   Se ha discutido algo acerca del hecho de que el juez de distrito aplicó indebidamente la doctrina de *Cy-pres.*   Es innecesario considerar esa cuestión porque entendemos que la intención del testador aparece demostrada claramente por el testa-

mento y las pruebas que se presentaron sobre el mismo según han sido indicadas en la relación de hechos y conclusiones de la corte.

Encontramos que no se ha cometido ningún error, debiendo por consiguiente confirmarse la sentencia.

*Confirmada.*

Jueces concurrentes: Sres Presidente Hernández y Asociados MacLeary, del Toro y Aldrey.